NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
EXECU-RIDE CORP., :
: Civil Action No. 16-7434-BRM-DEA
Plaintiff, :
:
v. :
:
TRUCKER'S BANK PLAN, :
a division of 1st Source Bank, :
: **OPINION**
Defendant. :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following Motions: (1) Defendant Trucker's Bank Plan's ("Defendant") Motion to Dismiss (ECF No. 4), pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Defendant's Motion to Transfer the Case to the Northern District of Indiana (ECF No. 5). Plaintiff Execu-Ride ("Plaintiff") opposes both motions. (ECF Nos. 16, 17.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendant's Motion to Transfer is **GRANTED** and Defendant's Motion to Dismiss is **ADMINISTRATIVELY TERMINATED** with leave to refile in the transferee court.

I. **BACKGROUND**

Plaintiff is a New Jersey corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey. (Compl. (ECF No. 2) at Ex. A ¶ 1.) Specifically, Plaintiff owns and operates a motor vehicle rental business in New Jersey. (*Id.*) Plaintiff's sole owner and chief executive officer, Dustin Valenti, also resides in New Jersey. (Pls. Opp'n (ECF No. 15) at 2 (citing Tharney Decl. (ECF No. 15-2) ¶ 5).) Defendant is an Indiana corporation with its principal place of business in Indiana. (ECF. No. 2 at Ex. A ¶ 3).

1

In 2001, Plaintiff entered into a Master Installment Note and Security Agreement ("MINSA") with Defendant under which Defendant provided a line of credit to Plaintiff for purposes of financing Plaintiff's motor vehicle rental business. (*Id.* at Ex. A ¶ 1.) In accordance with the MINSA, Defendant extended Plaintiff an original line of credit of $200,000. (*Id.* at Ex. A ¶ 2.) The parties' commercial relations continued through 2013, with Plaintiff's line of credit reaching $2,500,000. (*Id.* ¶ 3.) Plaintiff used Defendant's financing to purchase or lease its fleet of vehicles (the "Fleet"). (Id. ¶ 4.) Under the terms of the MINSA, Plaintiff granted Defendant a lien and security interest in the Fleet, pursuant to the Uniform Commercial Code ("UCC"). (*Id.* at Ex. A ¶ 5.) Accordingly, Defendant filled UCC-1 statements to perfect its security interest in the Fleet. (*Id.*)

Throughout the course of the parties' commercial relationship, Plaintiff alleges it submitted timely payments and "never defaulted under any agreements with [Defendant]." (*Id.* at Ex. A ¶ 6.) However, sometime in February 2013, after allegedly "being contacted by a competitor of [Plaintiff], [Defendant] significantly reduced [Plaintiff]'s credit line and lowered its credit rating without notifying [Plaintiff] of this decision, purportedly based on information [Defendant] received regarding a decline in [Plaintiff]'s financial well-being." (*Id.* at Ex. A ¶ 7.) Sometime in September 2013, Defendant determined it wanted to terminate its relationship with Plaintiff. (*Id.* at Ex. A ¶ 9.) In October 2013, however, Defendant allegedly

> advised [Plaintiff] that it would agree to a 'workout,' initially indicating that terms proposed by Valenti were acceptable, but then reneging on its assurance by demanding that [Plaintiff] agree to release any and all potential claims against [Defendant], and agree that [Plaintiff] would not utilize any employees, agents or representatives of [Defendant] in litigation against any third parties.

(*Id.* at Ex. A ¶ 10.) Nonetheless, Defendant declared Plaintiff in default for failure to make its October 2013 payment, despite Plaintiff's belief "that such payment was to be part of the consideration for the workout, which was being negotiated at the time." (*Id.* at Ex. A ¶ 11.)

On November 12, 2013, Defendant filed an Order to Show Cause and Verified Complaint in the New Jersey Superior Court ("First Lawsuit"), against Plaintiff and other institutions, seeking a writ of replevin for immediate seizure of Plaintiff's Fleet and payment in excess of $1,200,000. (*Id.* at Ex. A ¶ 12.) Plaintiff alleges that during the course of that litigation, Defendant "intentionally withheld internal emails that clearly revealed its employees' attempts to sabotage [Plaintiff]'s business and relationship with its clients and lenders." (*Id.* at Ex. A ¶ 16.)

On February 28, 2014, via letter, Jeff Buhr, Defendant's Chief Credit Officer, allegedly advised Plaintiff's agent "that upon receipt of $499,500.00, and additional funds to satisfy [Plaintiff]'s total indebtedness, [Defendant] would release its liens on the Fleet." (*Id.* at Ex. A ¶ 18.) Plaintiff alleges it met the conditions set forth in the letter, but the Defendant refused to release its liens on the Fleet. (*Id.* at Ex. A ¶¶ 19-20.) "Despite [Plaintiff's] compliance with [Defendant]'s request, [Defendant] refused to release its liens on the Fleet." (*Id.* at Ex. A ¶ 20.) The New Jersey Superior Court then ordered Defendant to "discharge any and all UCC-1 or other security filings against [Plaintiff] within ten (10) days." (*Id.* at Ex. A ¶ 25.) Defendant complied with the order. (*Id.* at Ex. A ¶ 26.) Ultimately, "[t]he parties voluntarily dismissed the [First Lawsuit] without prejudice for reasons not relevant to the instant motion." (ECF No. 15 at 3 (citing ECF No. 15-2 ¶ 6).)

On September 20, 2016, Plaintiff filed a matter in the Superior Court of New Jersey Law Division, Middlesex County, alleging: (1) tortious interference with contractual relations (Count I); (2) tortious interference with prospective economic advantage (Count 2); (3) breach of contract

3

of the MINSA (Count 3); (4) breach of the covenant of good faith and fair dealing under the MINSA (Count 4); (5) violation of N.J.S.A. § 12A:9-513(c), relating to the termination of UCC financing statements (Count 5); (6) fraudulent concealment of evidence related to Defendant's alleged withholding of emails that evidence Defendant's intent to destroy Plaintiff's business and commercial relationship (Count 6); and (7) trade libel, alleging Defendant's employees made false, malicious and defamatory statements about Plaintiff to a trade magazine, potential lenders, and others (Count 7). (ECF No. 2 at Ex. A ¶¶ 32-73.) On October 18, 2016, Defendant filed a Notice of Removal, removing the matter from New Jersey State Court to this Court. (Not. of Removal (ECF No. 2).) Shortly thereafter, on October 25, 2016, Defendant filed a Motion to Dismiss and a Motion to Transfer this case to the Northern District of Indiana. (ECF Nos. 4, 5.) Plaintiff opposes both motions. (ECF Nos. 14, 15.)

## II. LEGAL STANDARDS

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Thus, in deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). In exercising this discretion and ruling on such a motion, courts impose a balancing test and take into account the factors enumerated in § 1404(a) – namely, the convenience of the parties, the convenience of the witnesses, and the interests of justice – as

4

well as a variety of private and public interest factors based on their relevancy to and effect on the litigation. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The public interest factors have included: "the enforceability of the judgment," "practical considerations that could make the trial easy, expeditious, or inexpensive," "the relative administrative difficulty in the two for a resulting from court congestion, "the local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80. Several private interests include: "plaintiff's forum preference as manifested in the original choice," "the defendant's preference," "whether the claim arose elsewhere," "the convenience of the parties as indicated by their relative physical and financial condition," "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records." *Id.* at 879. Another factor is a forum-selection clause, which "is treated as a manifestation of the parties' preferences as to a convenient forum" and is "entitled to substantial consideration." *Id.* at 880.

"Within this framework, courts should place great weight on valid forum-selection clauses." *Park Inn Int'l*, 105 F. Supp. 2d at 377. "While a valid forum-selection clause is not dispositive, it is entitled to substantial consideration." *Id.* (citations omitted). If a forum-selection clause is valid, the plaintiff bears the burden of "demonstrating why they should not be bound by their contractual choice of forum." *Id.* A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching," (2) "enforcement would violate a strong public policy of the forum," or (3)

"enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* at 565 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 256, 686 (D.N.J. 1998)).

Where a motion to transfer venue is based on a forum-selection clause, the Court must assume the parties' private interests "weigh entirely in favor of the preselected forum." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). In other words, "the 'interest of justice' is served by holding parties to their bargain." *Id.* at 583. Therefore, the Court cannot consider arguments about the parties' private interests. *Id.* It is inferred that whatever inconvenience the parties would suffer by being required to litigate the matter in the contractual forum as they agreed to do "was clearly foreseeable at the time of contracting." *Id.* As a result, a district court may only consider public interest factors. *Id.* A party seeking to avoid a forum-selection clause has the burden of establishing that public interests disfavoring the transfer outweigh the parties' choice. *Id.* at 581-82. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. The Supreme Court has stated:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain.

*Id.* at 583.

Lastly, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original

6

venue's choice-of-law rules." *Id.* at 582. Ordinarily, a federal court sitting in diversity must follow the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–496 (1941). However, an exception applies for § 1404(a) transfers, "requiring that the state law applicable in the original court also apply in the transferee court" to prevent defendants from invoking § 1404(a) to gain the benefits of the laws of another jurisdiction. *Atlantic Marine Constr. Co.*, 134 S. Ct. at 582.

### III. DECISION

This action could have been brought in the Northern District of Indiana and may, therefore, be transferred to that court pursuant to the plain language of 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought . . . ."). Pursuant to 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." There is only one Defendant in this matter and it is an Indiana corporation with its principal place of business in South Bend, Indiana. (ECF. No. 2 at Ex. A ¶ 3). Furthermore, there is diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states – New Jersey and Indiana – and the matter in controversy is at least $75,000. (*See id.* at ¶ 12 & Ex. A ¶ 1 (indicating that Plaintiff is a New Jersey corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey).)

The parties acknowledge the MINSA contains a forum-selection clause. (ECF No. 15 at 7.) Plaintiff has failed to show that the forum-selection clause is invalid and that enforcement of the forum-selection clause would be unreasonable or violate public policy. A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching;" (2)

7

"enforcement would violate a strong public policy;" or (3) "enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 565. Plaintiff does not argue that the forum-selection clause is unenforceable or invalid. Indeed, Plaintiff concedes the forum-selection clause in the MINSA is valid. (ECF No. 15 at 7 ("[Plaintiff] does not now dispute the enforceability of the parties' forum selection clause.").) Instead, Plaintiff argues the clause is so narrowly drafted that it does not apply to its claims of fraudulent concealment of evidence, failure to discharge financing statements, tortious interference, and trade liable. (*Id.* ("[Defendant]'s conduct described in [Plaintiff]'s Complaint falls outside the scope of the MINSA, . . . the forum selection clause is not operative here, and should be given little, if any, weight.").) Plaintiff, however, acknowledges the forum-selection clause applies to Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims, but that "enforcement of the forum selection clause would be unreasonable under the circumstances given that [Defendant] originally elected to file a lawsuit arising from its contractual relationship with [Plaintiff] in New Jersey, and the claims in this case arise primarily from conduct that occurred during that lawsuit." (*Id.*)

This Court is not persuaded by Plaintiff's arguments. The MINSA states:

> Borrower [Plaintiff] agrees that any dispute, controversy or claim *arising under or in connection* with this NOTE, its performance or its enforcement by Bank, shall be decided exclusively be and in the state or federal courts sitting in the State of Indiana. For such purpose, Borrower [Plaintiff] submits to the personal jurisdiction of the state and federal courts sitting in the State of Indiana.
> . . . .
> Borrower agrees to and does hereby waive any right to assert or move for transfer of venue to any court outside the State of Indiana, based upon the doctrine of forum non conveniens or otherwise.

(ECF No. 2 at 22 (emphasis added).) Although only two of Plaintiff's claims are based on a breach of contract theory, all of them involve allegations arising out of the MINSA and all claims are

8

connected to the MINSA. Indeed, Plaintiff's claims would not exist but for the existence of the MINSA. In *Crescent International, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988), the Third Circuit granted transfer where "only one of [the plaintiff]'s claims [was] based on a breach of contract theory, [because] all of them involve[d] allegations arising out of the agreement implicating its terms." The other asserted claims were RICO violations, fraud, unfair competition and tortious interference. *Id.* The forum-selection clause in that agreement "chose Florida law and provided that 'any litigation upon any of [its] terms . . . shall be maintained' in a state or federal court in Miami, Florida." *Id.* The court found "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Id.* As previously stated and as demonstrated by the facts of this case, Plaintiff's claims would not exist but for its commercial and contractual relationship with Defendant. As such, this Court finds the forum-selection clause enforceable and applicable to all of Plaintiff's claims.

Plaintiff further argues the private and public factors weigh against transfer of this action. (ECF No. 15 at 5-10.) This Court is not persuaded these arguments. First, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine Constr. Co.*, 134 S. Ct. at 582. Plaintiff's contentions are rooted primarily in its own private interests and cannot be considered.

Likewise, this Court is not persuaded by Plaintiff's argument that the public factors weigh against transfer of this action. Plaintiff argues "[a] federal court sitting in New Jersey certainly has a strong local interest in deciding claims asserted by a local small business, incorporated and doing business in the state, against a large foreign financial institution, arising from alleged misconduct

9

perpetrated in a prior case in New Jersey State Court." (ECF No. 15 at 9.) While it might be true that New Jersey district courts take an interest in perpetrating wrongs that occur to its citizens, this Court finds this factor on its own is insufficient to prevent transfer. Indeed, Plaintiff agreed to litigate anything arising under or in connection with MINSA in Indiana. To the extent Plaintiff argues a conflict of laws exists between Indiana and New Jersey, the Northern District of Indiana is fully capable of applying the laws of Indiana and New Jersey. Lastly, Plaintiff argues this matter should remain in the District of New Jersey because Defendant previously sued Plaintiff in New Jersey State Court. That claim is without merit. As Plaintiff concedes, the First Lawsuit was "by way of Order to Show Cause and Verified Complaint seeking, inter alia, a writ of replevin for immediate seizure of [Plaintiff]'s auto fleet." (ECF No. 15 at 3.) Because that underlying action involved replevin, Defendants had to file the writ in New Jersey. *See* N.J. Ct. R. 4:61-1 ("The writ of replevin shall be signed in the name of the clerk of the court issuing the writ and shall be directed to the sheriff, or other officer authorized by law, of the county where the chattels are located and shall described them with particularity."); *Greten v. Passaic-Bergen Bottle Co.*, 15 A.2d 644, 646 (1940) (stating replevin is a local action).

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Transfer is **GRANTED** and Defendant's Motion to Dismiss is **ADMINISTRATIVELY TERMINATED** with leave to refile in the transferee court.

Date: May 10, 2017  */s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
**UNITED STATES DISTRICT JUDGE**