UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EXECU-RIDE CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-362 JD |
| | ) |
| TRUCKER'S BANK PLAN, a division | ) |
| of 1st SOURCE BANK, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This case involves a dispute between a vehicle rental business, Execu-Ride Corp., and its former lender, 1st Source Bank. The parties did business for over ten years before their relationship soured. Execu-Ride alleges in this action that the Bank failed to timely release its liens on Execu-Ride's property once it settled its obligations to the Bank, and that the Bank made false statements about it to other lenders and to a trade publication, among other allegations. This suit was filed in state court in New Jersey, after which it was removed to federal court and then transferred to this district. The Bank has now filed a partial motion to dismiss, arguing that Execu-Ride's claims for tortious interference and for breach of the duty of good faith and fair dealing fail to state a claim, and that there is no legal basis for the complaint's request for attorneys' fees as a form of relief. For the following reasons, the Court grants the motion in part and denies it in part.

### I. FACTUAL BACKGROUND

Execu-Ride owns and operates a vehicle rental business in New Jersey. In 2001, it entered an agreement with the Bank under which the Bank provided a line of credit for purposes of financing Execu-Ride's business. Over time, the line of credit grew from $200,000 to

$2,500,000. Pursuant to their agreement, Execu-Ride granted the Bank a lien and security interest in its fleet of vehicles. The Bank accordingly filed UCC-1 statements to perfect its security interest.

This arrangement continued for a number of years, apparently without incident. In 2013, however, the Bank reduced Execu-Ride's credit limit, after which it decided to terminate its relationship with Execu-Ride. The parties began discussing a workout in October 2013, but the Bank declared Execu-Ride to be in default for missing its payment that month, even though Execu-Ride believed that the payment would be included in the workout that was being negotiated. Litigation then ensued in state court in New Jersey. Execu-Ride alleges that the parties reached an agreement and that Execu-Ride satisfied its obligations to the Bank in March 2014. Despite Execu-Ride's demands, though, the Bank did not file the documents to discharge its security interest in Execu-Ride's property until September 2015, after it was ordered to do so by the state court. That state court action was ultimately dismissed without prejudice by agreement of the parties.

Execu-Ride further alleges that the Bank made false statements about it to other lenders and to others in the industry. It alleges that the Bank falsely told other lenders that Execu-Ride continued to owe it money even after all the collateral had been paid off, and that Execu-Ride had been past due on its loans with the Bank. One of the Bank's executives also made similar statements to a trade publication. Execu-Ride alleges that these false statements caused a number of other lenders to cease doing business with it.

Execu-Ride initiated the present action by filing a complaint in a state court in New Jersey. The complaint asserted claims for tortious interference with contractual relations and with prospective economic advantage; breach of contract; breach of the duty of good faith and

fair dealing; violation of New Jersey's Uniform Commercial Code; fraudulent concealment of evidence; and trade libel. The Bank removed this case to federal court and then moved to transfer the case to this district. The court granted that motion, as the parties' agreement contained a forum-selection clause requiring any dispute between the parties to be brought in Indiana. [DE 19]. After the transfer, the Bank filed a partial motion to dismiss, and that motion is fully briefed.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

The Bank's motion to dismiss raises three issues. First, the Bank moves to dismiss the claims for tortious interference with contractual relations (Count I) and with prospective economic advantage (Count II), asserting that those claims are barred by the economic loss

doctrine. Second, it moves to dismiss the claim for breach of the duty of good faith and fair dealing (Count IV) on the basis that Indiana law does not recognize such a duty. Third, it moves to dismiss the request for attorneys' fees in the complaint's prayer for relief, arguing that none of the claims in this action authorize that form of relief. The Court addresses each issue in turn.

A.  **Counts I and II: Tortious Interference**

The Bank first moves to dismiss Execu-Ride's claims in Counts I and II for tortious interference. In support, it relies on the economic loss doctrine, which "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Trico Equip., Inc. v. Manor*, Civ. No. 08-5561, 2011 WL 705703, at *3 (D.N.J. Feb. 22, 2011) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)).[1] In other words, the economic loss doctrine bars recovery on "a contract claim in tort claim clothing." *G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014) (internal quotation omitted). "'[W]hether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties.'" *Trico Equip.*, 2011 WL 705703, at *3 (quoting *State Capital Title & Abstract Co. v. Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.M.J. 2009)). The economic loss doctrine bars a claim if the plaintiff "simply is seeking to enhance the benefit of the bargain [it] contracted for," but it does not apply if the plaintiff asserts that the defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002).

In arguing that the economic loss doctrine bars Execu-Ride's claims for tortious interference, the Bank construes those claims as resting solely on the allegation that it improperly

---

[1] Both parties rely on New Jersey law as to these claims. In the absence of any dispute between the parties, the Court does so as well.

4

delayed in discharging its liens on Execu-Ride's property. The Bank argues that its duty to discharge the liens arises from the parties' contract, so its failure to comply with that duty could not support independent tort claims. If that were the sole basis for these claims, they would clearly be encompassed in the economic loss doctrine, and Execu-Ride does not attempt to argue otherwise. Instead, it asserts that this claim is based on distinct allegations of conduct extrinsic to the contract. In particular, it asserts that this claim rests on disparaging statements that the Bank made about it to third parties. For example, the complaint alleges that the Bank "made willfully false statements [about Execu-Ride] to lenders in the industry," including that Execu-Ride still owed the Bank money and was past due on its loans, and that the Bank made similar false statements about Execu-Ride to a trade publication. [DE 22 ¶¶ 28–29]. The complaint alleges that as a result of those false statements, a number of lenders ceased doing business with Execu-Ride. *Id.* ¶ 31.

There is no indication that the parties' contract contemplates or attempts to regulate statements of that sort to third parties. Accordingly, at least as thus framed, these claims arise from conduct that is extrinsic to the contract, so they would not be barred by the economic loss doctrine. For its part, the Bank makes no attempt to argue that a claim founded on those allegations would be barred by the economic loss doctrine.[2] Instead, it disputes that these claims, as pled in the complaint, are actually based on those allegations. As the Bank notes, the only specific conduct that the complaint identifies under the headings for these counts is the Bank's delay in discharging its liens. [DE 22 ¶¶ 34, 40]. As just noted, that conduct would not be a valid basis for these claims. However, both of these counts also incorporate by reference each of the

---

[2] In fact, those same statements form the basis for Execu-Ride's claim for trade libel, which the Bank has not moved to dismiss.

preceding paragraphs of the complaint. *Id.* ¶¶ 32, 38. Those paragraphs include the allegations about the Bank's false statements to Execu-Ride's lenders and to a trade publication, and the allegation that Execu-Ride's lenders ceased doing business with it as a result of those false statements. *Id.* ¶¶ 28–31.

A complaint need not be artfully drafted or organized to survive a motion to dismiss, and dismissing these claims in order for Execu-Ride to copy and paste those allegations under the headings for these particular counts would be a needless exercise. Since the complaint incorporated the allegations in those paragraphs into these counts, and since Execu-Ride has now clarified the basis for these claims, the Court finds that the complaint adequately states claims for tortious interference based on the Bank's alleged statements to a trade publication and to other third parties. Therefore, the Court denies the motion to dismiss as to the tortious interference claims in Counts I and II.

**B.     Count IV: Good Faith and Fair Dealing**

The Bank next moves to dismiss Count IV, which alleges that the Bank breached its implied contractual duty of good faith and fair dealing. The parties agree that Indiana law does not recognize such a duty, but that New Jersey law does, so the only question is whether Indiana or New Jersey law governs this claim.

The Bank notes that the contract upon which this claim is based contains a choice-of-law provision stating that Indiana law governs the contract. The Bank argues that this provision controls, and that because Indiana law does not recognize an implied duty of good faith and fair dealing, this count fails to state a claim. In response, Execu-Ride begins by arguing that because this action was transferred to this district from New Jersey under 28 U.S.C. § 1404(a), New Jersey's choice-of-law rules apply. It then argues that New Jersey would decline to enforce the

6

choice-of-law provision because applying the law of a state that does not recognize a duty of good faith and fair dealing would violate the public policy of New Jersey.

Execu-Ride's argument fails at the outset, however.[3] It is true, as a general matter, that when a case is transferred under § 1404(a), the court applies the choice-of-law rules of the state from which the case was transferred. *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990). However, when a case is transferred under § 1404(a) pursuant to a forum-selection clause, that rule does not apply. As the Supreme Court explained in *Atlantic Marine*: "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." *Atlantic Marine Const. Co. v. U.S. Dist. Ct.*, 134 S. Ct. 568, 582 (2013) ("The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right.").

Here, this case was transferred to this district under § 1404(a), but that transfer was ordered pursuant to a forum-selection clause that required any suit arising out of the contract to be brought in Indiana. [DE 19 ("[T]his Court finds the forum-selection clause enforceable and applicable to all of Plaintiff's claims.")]. Therefore, consistent with *Atlantic Marine*, the Court applies Indiana's choice-of-law rules. 134 S. Ct. at 582 ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits."). And because

---

[3] The second step of Execu-Ride's argument likely fails as well. In *Ocean City Exp. Co. v. Atlas Van Lines, Inc.*, No. 13-1467, 2013 WL 3873235, at *4 (D.N.J. July 25, 2013), a court in the District of New Jersey noted that the "implied duty of good faith and fair dealing arises from New Jersey's common law, not from some overarching legislative statement of public policy." (internal citation omitted). Accordingly, the court enforced a choice-of-law provision for Indiana law, and thus dismissed a claim for breach of the implied duty of good faith and fair dealing. *Id.* at *4–5. Execu-Ride cites no case that has declined to enforce a choice-of-law provision under these circumstances.

Execu-Ride has made no argument that Indiana would decline to enforce a choice-of-law provision for Indiana law, the Court finds that Indiana law governs this claim. Therefore, since Indiana law does not recognize an implied contractual duty of good faith and fair dealing, this count fails to state a claim, so the motion to dismiss is granted.

**C.      Attorneys' Fees**

Finally, the Bank moves to dismiss Execu-Ride's request for attorneys' fees in its prayer for relief, arguing that attorneys' fees are not recoverable through any of the claims Execu-Ride asserts in this action. In its response, Execu-Ride does not argue to the contrary, but instead argues that dismissing that request would be premature because "it remains to be seen if the Bank's conduct rose to the point where the finder of fact may deem it just to award . . . attorneys' fees." [DE 33 p. 11]. Execu-Ride does not attempt to identify any authority that would permit such an award, though, nor did it respond to 1st Source Bank's argument that there is none. Given the absence of any legal basis for Execu-Ride's request for this form of damages, the Court grants the motion to dismiss as to the request for attorneys' fees.

### IV.  CONCLUSION

The Bank's motion to dismiss [DE 25] is GRANTED in part and DENIED in part. The Court denies the motion as to the tortious interference claims in Counts I and II, but grants the motion as to the good-faith-and-fair-dealing claim in Count IV and the request for attorneys' fees in the prayer for relief.

SO ORDERED.

ENTERED:  February 26, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court